UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TENISA N. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:20-CV-340-KAC-DCP |
| | ) | |
| PRESTON TUCKER, *individually and in his official capacity;* | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the "Motion for Summary Judgment of Defendant Preston Tucker," [Doc. 33], and "Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment," [Doc. 42]. The Court **DENIES** Plaintiff's Motion for Extension of Time to Respond because she has not shown excusable neglect. And because there are no genuine disputes of material fact and Defendant is entitled to judgment as a matter of law, the Court **GRANTS** summary judgment to Defendant on Plaintiff's Section 1983 claim and **DISMISSES** this action.

### I. Background[1]

This case arises from an encounter between Defendant Knoxville Police Department (KPD) Officer Preston Tucker and Plaintiff Tenisa Foster that occurred shortly after 2:00 A.M. on August 24, 2019 [Doc. 33-1 ¶ 3 (Affidavit of Defendant Preston Tucker ("Tucker Aff."))]. Plaintiff was attending an event at El Patron, a Knoxville area nightclub [Doc. 33-3 (Internal

---

[1] Because Plaintiff is the non-moving Party, the Court describes the facts in the light most favorable to her. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

Affairs Unit ("IAU") Interview of Tenisa Foster ("Foster IAU Interview"))]. Defendant was at El Patron on special assignment with KPD because "KPD officers had been made aware of the potential use of firearms and other violence that might occur in the nightclub involving gang members who were expected to be in attendance" [Doc. 33-1 ¶ 3 (Tucker Aff.)]. The event ended early when security could not control the crowd and multiple fights broke out between attendees [Doc. 33-3 (Foster IAU Interview)].

When the event ended, Plaintiff exited the nightclub to check on two acquaintances who were breaking up fights outside [*Id.*]. Plaintiff then attempted to reenter El Patron [*Id.*]. Marcos McCord, a member of El Patron's security staff, denied Plaintiff reentry [*Id.*; Doc. 33-2 at 34 (Transcript of IAU Interview of McCord ("McCord IAU Interview"))]. McCord testified that Plaintiff became "really, really, really angry" when he denied her reentry, and Plaintiff demanded that she be let back into El Patron [Doc. 33-2 at 34 (McCord IAU Interview)]. Around this same time, Defendant was preparing to enter El Patron to respond to reports of fights inside the nightclub [Doc. 33-1 ¶ 4 (Tucker Aff.)]. Defendant "saw [Plaintiff] swing her arm towards the head of the security staff member [McCord] with a closed fist, and then [Plaintiff] continued to strike him [McCord] several more times" [*Id.*]. McCord stated that Plaintiff punched him three or four times in the chin and chest [Doc. 33-2 at 33 (McCord IAU Interview)].

Within seconds of seeing Plaintiff strike McCord, Defendant intervened [Doc. 33-1 ¶ 5 (Tucker Aff.)]. Defendant initially "grabbed [Plaintiff] around her waist intending to pull her away from the security staff member [McCord] but immediately realized that [he] would not be able to do so because of her size" [*Id.*]. [2] Plaintiff "continued to take an aggressive posture toward the

---

[2] Officer Tucker is 5'10" tall and weighed approximately 185 pounds at the time of the incident [Doc. 33-1 ¶ 10 (Tucker Aff.)]. Plaintiff is approximately 6'0" tall and weighed 180 pounds at the time of the incident [Doc. 33-2 at 61 ("KPD Incident Report")].

2

security staff member [McCord] with her arm raised" [*Id.*]. Defendant then "used a leg sweep on [Plaintiff], which enabled [him] to take [Plaintiff] to the ground" to maintain control of her [*Id.*]. Once on the ground, Plaintiff complied with Defendant's commands [*Id.* ¶ 6 (Tucker Aff.)]. Defendant handcuffed Plaintiff and took her into custody on a charge of disorderly conduct [*Id.*]. Defendant asked Plaintiff is she was injured or needed medical attention [*Id.*]. She denied both [*Id.*].

Plaintiff filed suit against Defendant, "in his official and individual capacities,"[3] on August 5, 2020 [Doc. 1 at 1]. She asserted a claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth and Fourteenth Amendments and claims under Tennessee state law for assault, intentional infliction of emotional distress, and false arrest [*Id.* at 3]. Defendant filed the instant Motion for Summary Judgment, asserting that he "did not violate [Plaintiff's] constitutional rights and, in any event, he is entitled to qualified immunity" and arguing that there is no genuine dispute of material fact as to Plaintiff's state law claims [*See* Doc. 35 at 1]. Plaintiff failed to respond to Defendant's Motion for Summary Judgment. Nearly two months after Plaintiff's response to Defendant's Motion for Summary Judgment was due, and after the Court issued an Order to Show Cause [Doc. 38], Plaintiff filed a "Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment" [Doc. 42]. In that Motion, Plaintiff asserted that "Counsel for

---

[3] As a legal matter, any Section 1983 claim against Defendant in his official capacity actually "seeks damages not from the individual officer, but from the entity for which the officer is an agent." *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Here, any Section 1983 claim against Defendant in his official capacity is nothing more than a claim for compensatory and punitive damages against Knox County [*See* Doc. 1 at 3]. *See Leach v. Shelby Cnty.*, 891 F.2d 1241, 1245-46 (6th Cir. 1989). But Plaintiff has not pled or otherwise identified any municipal policy that could impose liability on Knox County. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Accordingly, any purported Section 1983 claim against Defendant in his official capacity must be dismissed.

Plaintiff has been involved in preparation and trial of a murder case . . . and as a result, had inadvertently lost track of the timelines in the above styled matter" [*Id.* at 1]. Defendant opposed Plaintiff's motion for extension, asserting that "Plaintiff advances no argument which would support a finding of excusable neglect" [Doc. 43 at 4].

   II.   **Plaintiff's "Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment" [Doc. 42]**

The Court may extend a deadline "after the time has expired" upon concluding that "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Following *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993), the Court balances five non-exclusive factors in making this equitable determination: (1) the reason for the delay, (2) whether the delay was within the reasonable control of the moving party, (3) any prejudice to the nonmoving party, (4) the length of the delay and its impact on the judicial proceedings, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). But the *Pioneer* factors "do not carry equal weight; the excuse given for the late filing must have the greatest import." *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) (citation omitted), *cert. denied*, 563 U.S. 929 (2011); *see also United States v. Thompson*, 82 F.3d 700, 702 (6th Cir. 1996) (explaining that the district court must examine questions of prejudice and bad faith only after finding excusable neglect).

Here, the *Pioneer* factors do not support a finding of excusable neglect. Missing a deadline to respond to a potentially dispositive motion because counsel was involved in preparing for a trial in another case does not constitute excusable neglect. *See Jackson v. Chandler*, 463 F. App'x 511, 514 (6th Cir. 2012) (citing *Baker v. Raulie*, 879 F.2d 1396, 1400 (6th Cir. 2989)). This delay was within Plaintiff's control. And Defendant was prejudiced by the delay in adjudicating this case.

4

Accordingly, the Court **DENIES** Plaintiff's "Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment" [Doc. 42].

### III. "Motion for Summary Judgment of Defendant Preston Tucker" [Doc. 33]

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the opposing party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247-48).

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). The Court thus "begins by identifying the specific constitutional right," or rights, Plaintiff alleges were violated. *Id.* at 394

(citations omitted). Here, Plaintiff alleges Defendant violated her Fourth Amendment right to be free "from unreasonable search and seizure" and her Fourteenth Amendment right to "due process" [Doc. 1].

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "The Fourth Amendment's prohibition against unreasonable seizures prohibits the use of ***excessive force*** against free citizens." *Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014) (emphasis added). "[W]hether an officer has used excessive force depends on 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to safety of the officers or others, and [3] whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and it "must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Scott v. Clay Cnty. Tenn.*, 205 F.3d 867, 877 (6th Cir. 2000) (quoting *Graham*, 490 U.S. at 396-97).

In contrast, a "substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment." *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *Graham*, 490 U.S. at 396-97; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). A Fourteenth Amendment due process violation occurs only where the "conduct of a law enforcement officer towards a citizen . . . 'shocks the conscience.'" *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *Cnty. of Sacramento*, 523 U.S. at 846).

6

"[I]n a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . . [, an officer's] reflexive actions 'shock the conscience' only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Id*.

Where warranted, the doctrine of qualified immunity shields a law enforcement officer, sued in his or her individual capacity, from suit under Section 1983. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the familiar test for qualified immunity, a public official is immune from suit unless the plaintiff establishes: (1) a constitutional violation; and (2) that the right at issue was 'clearly established' when the event occurred." *Gordon*, 20 F.4th at 1082 (citation omitted); *see also Pearson*, 555 U.S. at 231. "If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages." *Gordon*, 20 F.4th at 1082 (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)).

For the right at issue to be "'clearly established,' 'existing precedent'" at the time of the alleged constitutional violation "'must have placed the statutory or constitutional question beyond debate.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). In the use of force context, where cases are often fact-specific, the Sixth Circuit has instructed that "[p]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *See Gordon*, 20 F.4th at 1082 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal citation omitted)). Plaintiff must either "identify a case that put [the officer] on notice that his specific conduct was unlawful" or show that this is an "obvious case" where the prevailing standards "'clearly establish' the answer, even without a body of relevant caselaw." *Rivas-Villegas*, 142 S. Ct. at 8 (per curiam) (citations omitted).

As an initial matter, the Court views Plaintiff's failure to timely respond to Defendant's Motion for Summary Judgment as "a waiver of any opposition to the relief sought." *See* E.D. Tenn. L.R. 7.2. This waiver of opposition alone is a sufficient basis to grant Defendant's Motion. However, even if the Court were to consider Plaintiff's claims,[4] the Court's review of the record presents no genuine dispute of material fact as to Plaintiff's Section 1983 individual capacity claim.

Applying the Fourth Amendment framework to the undisputed facts of this case, Defendant did not violate Plaintiff's rights. Defendant was at El Patron in the early morning of August 24 responding to reports of multiple fights occurring inside the nightclub [Doc. 33-1 ¶ 4 (Tucker Aff.)]. Upon approaching the entrance, Defendant saw Plaintiff acting aggressively and assaulting McCord, punching him repeatedly in the chin and chest [*Id.* ¶ 4-5 (Tucker Aff.)]. Defendant reasonably believed that Plaintiff posed an immediate threat to McCord's safety, and a potential threat to the surrounding public and Defendant. And Defendant reasonably assessed that swift intervention was necessary to stop the active violence [*See id.* ¶ 5 (Tucker Aff.)]. Due to Plaintiff's ongoing violence against McCord, the possibility of harm to the public and law enforcement, and the rapidly evolving situation—including KPD's knowledge of potential gang related violence—at the nightclub, Defendant's use of the minimally invasive "leg sweep" maneuver to subdue Plaintiff was objectively reasonable. *See Graham*, 490 U.S. at 396; *Phillips v. Blair*, 786 F. App'x 519, 530 (6th Cir. 2019) (finding officer's use of "leg sweep" objectively reasonable where the plaintiff was a suspect in a potential crime and officers "reasonably believed that [the suspect] could lash out and harm them" or resist arrest). Accordingly, Defendant did not violate Plaintiff's Fourth Amendment rights.

---

[4] *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870-71 (6th Cir. 2015).

Further, even if Defendant's conduct had violated Plaintiff's Fourth Amendment rights, he is entitled to qualified immunity because "the right at issue" was not "clearly established" when he used the "leg sweep" maneuver to subdue Plaintiff on August 24, 2019. *See Gordon*, 20 F.4th at 1082 (quoting *Martin*, 712 F.3d at 957). A right is "clearly established" only when it is "'sufficiently clear that every reasonable official would have understood what he was doing violates that right.'" *Rivas-Villegas*, 142 S. Ct. at 7 (per curiam) (quoting *Mullenix v. Luna*, 557 U.S. 7, 11 (2015) (per curiam)). The Court must consider "the specific facts of the case and their similarity to caselaw in existence at the time of the alleged violation." *Gordon*, 20 F.4th at 1082 (citations omitted). Specificity and similarity are "'especially important' in the Fourth Amendment excessive force context." *Id.* To overcome qualified immunity, Plaintiff had the burden to either "identify a case that put [the officer] on notice that his specific conduct was unlawful" or show that this is an "obvious case" where the prevailing standards "clearly establish the answer." *See Rivas-Villegas,* 142 S. Ct. at 8 (per curiam) (citations omitted). Plaintiff has not done so. Nor could she.

The "use of a takedown maneuver" can amount to excessive force in certain factual sccenarios. *See LaPlante v. City of Battle Creek,* 30 F.4th 572, 581 (6th Cir. 2022) (collecting cases). However, the Court's review has revealed no case establishing that the use of a takedown maneuver—standing alone—amounts to excessive force when the suspect poses an immediate danger to the public. *See, e.g., Pershell v. Cook,* 430 F. App'x 410, 415 (6th Cir. 2011) (denying qualified immunity where, after performing a "leg sweep" and handcuffing the suspect, officers continued to strike the suspect); *McCaig v. Raber*, 515 F. App'x 551, 555 (6th Cir. 2013) (concluding that "a reasonable jury could find that [the officer's] use of a takedown maneuver was not [objectively] reasonable" where the suspect "made no aggressive gestures or statements,

9

attempted to cooperate, offered no resistance, and stated that he would 'go easy'"). And this is not the rare "obvious case" where prevailing Sixth Circuit standards "clearly establish the answer." *See Rivas-Villegas*, 142 S. Ct. at 8 (per curiam) (citations omitted). Accordingly, even if Defendant's use of the "leg sweep" maneuver under the facts of this case violated the Fourth Amendment, he is entitled to qualified immunity because the right at issue was not clearly established during the relevant time period.

Similarly, applying the Fourteenth Amendment framework, Defendant's use of a "leg sweep" was not "so 'egregious' that it can be said to be 'arbitrary'" and "shock the conscience." *See Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). In the rapidly evolving, or devolving, circumstances at the nightclub on August 24, Defendant "took action in a good faith effort to . . . restore discipline." *See Claybrook*, 199 F.3d at 359. And even if Defendant's actions somehow met the "shock the conscience" standard, Defendant is entitled to qualified immunity because no precedent placed the constitutional question beyond debate. *See Rivas-Villegas*, 142 S. Ct. at 4, 8.

The Court therefore **GRANTS** Defendant's "Motion for Summary Judgment" [Doc. 33] as to Plaintiff's Section 1983 claim. Because the Court dismisses Plaintiff's Section 1983 claim, the claim on which this Court's jurisdiction rests, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses these claims. *See Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020); *see also* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction when it has dismissed all other claims over which it had original jurisdiction).

10

Case 3:20-cv-00340-KAC-DCP   Document 46   Filed 03/02/23   Page 10 of 11   PageID #: 264

attempted to cooperate, offered no resistance, and stated that he would 'go easy'"). And this is not the rare "obvious case" where prevailing Sixth Circuit standards "clearly establish the answer." *See Rivas-Villegas*, 142 S. Ct. at 8 (per curiam) (citations omitted). Accordingly, even if Defendant's use of the "leg sweep" maneuver under the facts of this case violated the Fourth Amendment, he is entitled to qualified immunity because the right at issue was not clearly established during the relevant time period.

Similarly, applying the Fourteenth Amendment framework, Defendant's use of a "leg sweep" was not "so 'egregious' that it can be said to be 'arbitrary'" and "shock the conscience." *See Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). In the rapidly evolving, or devolving, circumstances at the nightclub on August 24, Defendant "took action in a good faith effort to . . . restore discipline." *See Claybrook*, 199 F.3d at 359. And even if Defendant's actions somehow met the "shock the conscience" standard, Defendant is entitled to qualified immunity because no precedent placed the constitutional question beyond debate. *See Rivas-Villegas*, 142 S. Ct. at 4, 8.

The Court therefore **GRANTS** Defendant's "Motion for Summary Judgment" [Doc. 33] as to Plaintiff's Section 1983 claim. Because the Court dismisses Plaintiff's Section 1983 claim, the claim on which this Court's jurisdiction rests, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses these claims. *See Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020); *see also* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction when it has dismissed all other claims over which it had original jurisdiction).

## IV. Conclusion

For the reasons stated above, the Court **DENIES** Plaintiff's "Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment" [Doc. 42]. The Court **GRANTS** the "Motion for Summary Judgment of Defendant Preston Tucker" [Doc. 33] and **DISMISSES** Plaintiff's Section 1983 claim. Further, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and **DISMISSES** those claims. An appropriate judgment shall enter.

IT IS SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge